1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                    SOUTHERN DISTRICT OF CALIFORNIA

10

11  GAYLON M. MAJORS,              )  Civil No. 06cv1126-BTM(RBB)
                                   )
12              Petitioner,        )  **REPORT AND RECOMMENDATION RE:**
                                   )  **DENYING PETITION FOR WRIT OF**
13  v.                             )  **HABEAS CORPUS [DOC. NO. 1]**
                                   )
14  JAMES E. TILTON, Acting        )
    Secretary, California          )
15  Department of Corrections,     )
                                   )
16              Respondent.        )
    _____)

17

18       On May 23, 2006, Gaylon Majors filed a Petition for Writ of

19  Habeas Corpus [doc. no. 1].  Petitioner alleges two grounds for

20  relief:  (1) His conviction was based on insufficient evidence, in

21  violation of the Fourteenth Amendment; and (2) he was denied due

22  process of law and his right to a fair trial under the Fourteenth

23  Amendment because "illegally seized evidence was admitted into

24  evidence to prove the petitioner's propensity to commit rape."

25  (Pet. 6, 10.)  He further claims "[t]he California courts erred in

26  finding this constitutional error was harmless beyond a reasonable

27  doubt."  (Id. at 10.)  Majors also filed a Memorandum of Points and

28  Authorities [doc. no. 6] and Exhibits [doc. no. 7].  Respondent

1  filed an Answer [doc. no. 10] on October 5, 2006.  On November 13,

2  2006, Petitioner filed his Traverse [doc. no. 11].

3      After reviewing the Petition, Majors's Memorandum of Points

4  and Authorities and supporting exhibits, Respondent's Answer, the

5  Lodgments, and Petitioner's Traverse, this Court finds that Majors

6  is not entitled to the relief requested and recommends that his

7  Petition for Writ of Habeas Corpus be **DENIED** for the reasons

8  outlined below.

9                        **I. FACTUAL BACKGROUND**

10     On August 15, 2000, Alesandria Modesto rode her bike to a Zany

11 Brainy store in a shopping mall approximately thirty minutes from

12 her home to buy a gift for her brother.  (Lodgment No. 2, Rep.'s

13 Tr. vol. 3, 242-43, Mar. 12, 2001.)  She left the store to run

14 another errand, then returned and bought another item.  (Id. at

15 243-44.)  She put her purchases and the receipts in her backpack

16 and began to ride home.  (Id. at 244-45.)

17     When she was halfway home, Petitioner, who was standing

18 outside of a white van, flashed a badge at Alesandria and asked her

19 to stop.  (Id. at 245.)  Majors told Alesandria he was a security

20 guard for the mall, and he had been told that someone riding a bike

21 had shoplifted from the Zany Brainy store.  (Id. at 245-46.)

22 Alesandria got off her bike and showed him the items she had

23 bought, the receipts, and her identification.  (Id. at 246.)

24     Petitioner told Alesandria she needed to go back to the mall

25 with him to talk to the security guard at the store.  (Id. at 248.)

26 Majors tried to put her bike in the van, but it would not fit.

27 (Id.)  So he told her to lock it up at a school across the street.

28 (Id.)  Petitioner told Alesandria to give her backpack to him while

1   she locked up her bike, and she complied.  (<u>Id.</u> at 249.)  After

2   locking up her bike, Alesandria returned to Majors's van and asked

3   to see his badge again.  (<u>Id.</u>)  The badge had the words "Security

4   Guard" printed on it, and it was pinned to an orange laminated

5   card.  (<u>Id.</u> at 250-51.)  Alesandria testified at trial that she

6   believed Majors was a security guard and was afraid that if she did

7   not cooperate she could be taken to jail, even though she had done

8   nothing wrong.  (<u>Id.</u> at 253.)

9       Alesandria got in the van.  (<u>Id.</u> at 254.)  Petitioner took out

10  a cell phone and appeared to make a call to his partner, stating

11  that the suspect had been apprehended.  (<u>Id.</u>)  Alesandria asked if

12  she could call her parents, and Majors said she could when they got

13  back to the mall.  (<u>Id.</u>)  Petitioner drove to the rear parking lot

14  of the mall, claiming they were going to the security office.

15  (<u>Id.</u>)

16      Majors parked the van, and Alesandria started to get out; but

17  Petitioner grabbed her by the hair and slammed her head into the

18  passenger-side window.  (<u>Id.</u> at 260.)  He told Alesandria to get in

19  the back of the van, saying that if she complied he would not hurt

20  her.  (<u>Id.</u>)  Alesandria was scared and grabbed for his throat in an

21  attempt to get away.  (<u>Id.</u> at 261.)  Majors grabbed her head again

22  and tried to push her down.  (<u>Id.</u>)  Alesandria moved to the back of

23  the van to try to escape through the back doors, but Petitioner

24  pulled her by the back of her shirt and pants and threw her in the

25  back seat.  (<u>Id.</u>)  Alesandria was screaming and fighting to free

26  herself.  (<u>Id.</u>)  He told her to cooperate and he would not hurt

27  her.  (<u>Id.</u> at 262.)  Petitioner straddled her and pinned her arms

28  to her chest.  (<u>Id.</u> at 264-65.)  Majors hit Alesandria a couple

times on the side of the head and said, "I don't want to be mean to you, so just do what I say," while Alesandria continued to scream and cry.  (Id. at 265.)

Alesandria tried to kick Petitioner to get him off of her. (Id.)  Majors asked her if she wanted to die, and she said, "yes," so he responded, "Okay, you are going to die."  (Id.)  Alesandria continued kicking him, and he eventually said, "Okay, I will let you go."  (Id.)  She tried to open the door to leave, and Petitioner went to the front of the van and pushed a button to unlock the doors.  (Id. at 266.)  Majors then said, "Get out bitch," and Alesandria ran out of the van.  (Id.)  She ran to the front of the mall to find a security guard, and she reported the incident.  (Id. at 267.)

Alesandria tentatively identified Petitioner as her attacker in a photographic lineup.  (Id. at 298-99.)  A witness who testified at trial also identified Majors as the man she saw talking to Alesandria outside Petitioner's van.  (Id. at 321-22.) Majors's fingerprint was found on one of Alesandria's receipts from the Zany Brainy store.  (Id. at 329-30.)  On the day of Petitioner's arrest, he was seen driving a white Dodge Caravan registered to the United States Government.  (Id. at 299.)

After his arrest, the police obtained a warrant to search Majors's house and his Jeep Cherokee.  (Lodgment No. 1, Clerk's Tr. vol. 1, 37-38, Nov. 2, 2000; Lodgment No. 2, Rep.'s Tr. Augment, 42, Feb. 22, 2001.)  A search of the vehicle uncovered a canvas bag containing a digital camera, a set of binoculars, a plastic penis, an orange laminated card, and a pair of sunglasses.  (Id. at 45-46; Lodgment No. 2, Rep.'s Tr. vol. 3, 300-01.)  In Petitioner's home,

4

1  the police found a black plastic toolbox containing three

2  pornographic magazines, a magnifying glass, a pair of women's

3  panties with the crotch ripped out, computer disks, and a smaller

4  box.  (Lodgment No. 2, Rep.'s Tr. Augment, 48-49.)  Inside the

5  smaller box were videocassette tapes, a picture of a young Asian

6  woman, and several computer disks.  (Id. at 51-52.)  The police

7  seized these items.  (See Lodgment No. 1, Clerk's Tr. vol. 1, 47,

8  Nov. 2, 2000.)  One of the videotapes showed Petitioner having sex

9  with his ex-wife, inserting foreign objects into her vagina, and

10 orally copulating her while she was unconscious.  (Lodgment No. 2,

11 Rep.'s Tr. vol. 2, 133-34, Mar. 6, 2001.)

12                    **II. PROCEDURAL BACKGROUND**

13      On December 29, 2000, the San Diego County District Attorney

14 filed a nine-count information against Majors.  The first four

15 counts allege crimes against Alesandria:  count one -- kidnaping

16 for rape, see Cal. Penal Code § 209(b)(1) (West Supp. 2006), count

17 two -- kidnaping, see Cal. Penal Code § 207(a) (West Supp. 2006),

18 count three -- assault with intent to commit rape, see Cal. Penal

19 Code § 220 (West 1999), and count four -- false imprisonment, see

20 Cal. Penal Code §§ 236, 237(a) (West 1999 & Supp. 2006), all

21 relating to the attack on Alesandria.  (Lodgment No. 1, Clerk's Tr.

22 vol. 1, 1-2, Dec. 29, 2000.)  The information also charged

23 Petitioner with crimes against his ex-wife:  count five -- rape of

24 an unconscious person, see Cal. Penal Code § 261(a)(4) (West Supp.

25 2006), count six -- oral copulation of an unconscious person, see

26 Cal. Penal Code § 288a(f) (West Supp. 2006), and three counts of

27 rape by a foreign object of an unconscious person, see Cal. Penal

28 Code § 289(d) (West Supp. 2006) (seven, eight and nine), arising

1   from the assault on his ex-wife depicted on the videotape.

2   (Lodgment No. 1, Clerk's Tr. vol. 1, 1-3.)

3      Defense counsel filed a motion to dismiss count one of the

4   information pursuant to California Penal Code section 995 for lack

5   of probable cause to believe that Majors committed the crime.

6   (Lodgment No. 1, Clerk's Tr. vol. 1, 5, 10-11, Jan. 29, 2001.)  The

7   motion was denied.  (Lodgment No. 1, Clerk's Tr. vol. 2, 334, Feb.

8   22, 2001.)  Counsel also filed a motion to quash search warrant and

9   to suppress evidence, claiming the items found in the canvas bag in

10  Petitioner's Jeep and in the toolbox in his home were seized in

11  violation of the Fourth Amendment.  (Lodgment No. 1, Clerk's Tr.

12  vol. 1, 19-21.)  The motion was granted as to the computer disks

13  but denied for the other items.  (Id. at 47, Nov. 2, 2000; Lodgment

14  No. 1, Clerk's Tr. vol. 2, 335, Feb. 27, 2001.)

15     Majors pleaded guilty to counts five through nine of the

16  information, which related to the sexual abuse of his ex-wife

17  depicted on the videotape.  (Lodgment No. 1, Clerk's Tr. vol. 1,

18  199-201, Mar. 2, 2001; Lodgment No. 2, Rep.'s Tr. vol. 2, 41-42,

19  Mar. 2, 2001.)  Petitioner was tried by a jury on the other counts.

20  (See Lodgment No. 1, Clerk's Tr. vol. 2, 342, Mar. 7, 2001.)

21  Defense counsel made a motion in limine to exclude the videotape

22  from trial, which the prosecution proposed to use to prove Majors's

23  propensity to commit sexual offenses.  (Lodgment No. 1, Clerk's Tr.

24  vol. 2, 340-41, Mar. 6, 2001; see Lodgment No. 2, Rep.'s Tr. vol.

25  2, 82-83, Mar. 6, 2001.)  The trial judge granted the motion to

26  exclude the videotape but ruled that evidence of the conduct

27  depicted on the tape could be admitted by other means. (Lodgment

28  No. 1, Clerk's Tr. vol. 2, 341; Lodgment No. 2, Rep.'s Tr. vol. 2,

187-88.)   The parties subsequently entered into a stipulation of
facts concerning the events depicted on the tape and the testimony
Petitioner's ex-wife would give about the events if called as a
witness; the stipulation was read to the jury.  (Lodgment No. 2,
Rep.'s Tr. vol. 3, 293-94, Mar. 12, 2001.)

At the close of the prosecution's evidence, Petitioner's
attorney made a motion for judgment of acquittal based on
California Penal Code section 1118.1, specifically challenging the
sufficiency of the evidence of Majors's intent to commit rape.
(Id. at 331-33; Lodgment No. 1, Clerk's Tr. vol. 2, 346, Mar. 12,
2006.)  The motion was denied.  (Lodgment No. 1, Clerk's Tr. vol.
2, 346; Lodgment No. 1, Rep.'s Tr. vol. 3, 335.)

The jury convicted Petitioner on all four counts which related
to Alesandria.  (Lodgment No. 1, Clerk's Tr. vol. 2, 269-72, Mar.
14, 2001.)  On May 3, 2001, Majors filed a motion for new trial on
counts one (kidnaping for rape) and three (assault with intent to
commit rape), claiming that the evidence presented at trial was
insufficient to support the verdicts.  (Id. at 291-93, May 3, 2001;
Lodgment No. 2, Rep.'s Tr. vol. 4, 526-27, May 4, 2001.)  The
motion was denied.  (Lodgment No. 2, Rep.'s Tr. vol. 4, 529.)

Petitioner was sentenced to life imprisonment with the
possibility of parole for count one.  (Id. at 546.)  The court
imposed the mid-term sentence for counts two, three, and four to
run concurrently with count one, and stayed those terms pursuant to
California Penal Code section 654.  (Id.)  The court also sentenced
Majors to eight years imprisonment for count five, to run
consecutively to the term for count one.  (Id. at 547.)  The mid-
term sentence of six years was imposed for each of the remaining

1   counts, to run concurrently with count five.  (Id.)  Petitioner was

2   also ordered to pay a restitution fine of $5,000 and actual

3   restitution to the victims in an amount to be determined by the

4   court.  (Id. at 547-48.)  An additional $5,000 fine was suspended.

5   (Id. at 548.)

6       Majors filed a notice of appeal on May 8, 2001.  (Lodgment No.

7   1, Clerk's Tr. vol. 2, 329, May 8, 2001.)  On appeal, Petitioner

8   argued:  (1) His Fourth Amendment rights were violated when the

9   police seized and viewed the videotapes; (2) the use of propensity

10  evidence at trial violated his right to due process and a fair

11  trial; (3) the court erred in admitting into evidence the conduct

12  displayed on the videotape; (4) the evidence was insufficient to

13  support a finding of intent to rape; (5) the court abused its

14  discretion in sentencing; (6) Majors's convictions for kidnaping

15  and false imprisonment must be vacated because they are lesser-

16  included offenses of kidnaping for rape; and (7) the evidence was

17  insufficient to support a kidnaping conviction.  (Lodgment No. 3,

18  Appellant's Opening Brief at 8, 25, 27, 41, 44, 49, People v.

19  Majors, No. D037968 (Cal. Ct. App. Dec. 13, 2002); Lodgment No. 4,

20  Appellant's Supplemental Brief at 1, People v. Majors, No. D037968

21  (Cal. Ct. App. Dec. 13, 2002).)

22      The California Court of Appeal reversed Petitioner's

23  convictions for kidnaping (count two) and kidnaping for rape (count

24  one) for insufficient evidence.  (Lodgment No. 6, People v. Majors,

25  No. D037968, slip op. at 23 (Cal. Ct. App. Dec. 13, 2002).)  The

26  court also held that the trial court erred in denying Majors's

27  motion to suppress the videotape, and directed the trial court to

28  allow Petitioner to withdraw his guilty pleas to counts five

1  through nine.  (Id.)  The judgment was affirmed in all other

2  respects, and the case was remanded for resentencing.  (Id.)

3     The Attorney General filed a petition for review with the

4  California Supreme Court, and the court granted review on the

5  question of "whether evidence that a victim entered a defendant's

6  vehicle under threat of arrest is sufficient to satisfy the force

7  or fear element of section 207(a) kidnaping."  (Lodgment No. 8,

8  People v. Majors, No. S113086, slip op. at 5 (Cal. July 1, 2004);

9  see also Lodgment No. 7, People v. Majors, No. S11086, slip op. at

10  1 (Cal. Mar. 19, 2003).)  The California Supreme Court reversed the

11  judgment of the court of appeal, finding there was sufficient

12  evidence to convict Majors of kidnaping and kidnaping for rape.

13  (Lodgment No. 8, Majors, No. S113086, slip op. at 12, 17.)  The

14  case was remanded to the court of appeal for further proceedings.

15  (Id. at 17.)

16     On remand from the supreme court, the appellate court reversed

17  Petitioner's convictions for kidnaping and false imprisonment

18  because they are lesser-included offenses of kidnaping for rape.

19  (Lodgment No. 9, People v. Majors, No. D037968, slip op. at 19, 23

20  (Cal. Ct. App. Dec. 1, 2004).)  The court again held that the trial

21  judge erred in denying Majors's motion to suppress the videotape,

22  and directed the trial court to let Majors withdraw his guilty plea

23  to counts five through nine.  (Id. at 23.)  The judgment was

24  otherwise affirmed, and the case was remanded for resentencing.

25  (Id.)

26     Petitioner filed a Petition for Review in the California

27  Supreme Court, claiming there was insufficient evidence to prove

28  intent to rape and that the trial court committed error in

9

1  admitting the stipulation about the conduct depicted on the

2  videotape.  (Lodgment No. 10, Petition for Review at 2, <u>People v.</u>

3  <u>Majors</u>, No. D037968 (Cal. Feb. 23, 2005).)  The petition was

4  denied.  (Lodgment No. 11, <u>People v. Majors</u>, No. S130373, slip op.

5  at 1 (Cal. Feb. 23, 2005).)

6       The case was remanded to the trial court for resentencing.

7  (<u>See</u> Pet'r's Mem. Ex. J at 1.)  Majors moved to dismiss counts five

8  through nine, and the motion was granted.  (<u>Id.</u> Ex. I at 1.)  The

9  court sentenced Petitioner to the indeterminate term of life with

10 the possibility of parole for count one, and the mid-term of four

11 years for count three, which was stayed pursuant to California

12 Penal Code section 654.  (<u>Id.</u> Ex. J at 1.)

13      On May 23, 2006, Majors filed his federal habeas corpus

14 Petition in this Court [doc. no. 1].  Petitioner was granted leave

15 to file additional points and authorities and exhibits to his

16 Petition, and a Memorandum of Points and Authorities [doc. no. 6]

17 and Exhibits [doc. no. 7] were filed on July 20, 2006.  Respondent

18 filed an Answer and Memorandum of Points and Authorities [doc. no.

19 10] on October 5, 2006.  On November 13, 2006, Majors filed a

20 Traverse [doc. no. 11].

21               **III. STANDARD OF REVIEW**

22      The Antiterrorism and Effective Death Penalty Act ("AEDPA"),

23 28 U.S.C.A. § 2244 (West 1994 & Supp. 2006), applies to all federal

24 habeas petitions filed after April 24, 1996.  <u>Woodford v. Garceau</u>,

25 538 U.S. 202, 204 (2003) (citing <u>Lindh v. Murphy</u>, 521 U.S. 320, 326

26 (1997)).  AEDPA sets forth the scope of review for federal habeas

27 corpus claims:

28

1
2
3
4

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C.A. § 2254(a) (West 1994); see also Reed v. Farley, 512 U.S. 339, 347 (1994); Hernandez v. Ylst, 930 F.2d 714, 719 (9th Cir. 1991). Because Majors's Petition was filed on May 23, 2006, AEDPA applies to this case. See Woodford, 538 U.S. at 204.

In 1996, Congress "worked substantial changes to the law of habeas corpus." Moore v. Calderon, 108 F.3d 261, 263 (9th Cir. 1997). Amended § 2254(d) now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254(d) (West Supp. 2006).

A federal district court does "not sit as a 'super' state supreme court" with general supervisory authority over the proper application of state law. Smith v. McCotter, 786 F.2d 697, 700 (5th Cir. 1986); see also Lewis v. Jeffers, 497 U.S. 764, 780 (1990) (holding that federal habeas courts must respect a state court's application of state law); Jackson v. Ylst, 921 F.2d 882, 885 (9th Cir. 1990) (concluding that federal courts have no authority to review a state's application of its law). Federal

11

courts may grant habeas relief only to correct errors of federal constitutional magnitude.  <u>Oxborrow v. Eikenberry</u>, 877 F.2d 1395, 1400 (9th Cir. 1989) (stating that federal courts are not concerned with errors of state law unless they rise to the level of a constitutional violation).

The Supreme Court, in <u>Lockyer v. Andrade</u>, 538 U.S. 63 (2003), stated that "AEDPA does not require a federal habeas court to adopt any one methodology in deciding the only question that matters under § 2254(d)(1) -- whether a state court decision is contrary to, or involved an unreasonable application of, clearly established Federal law."  <u>Id.</u> at 71 (citation omitted).  A federal court is not required to review the state court decision <u>de novo</u>.  <u>Id.</u> Rather, a federal court can proceed directly to the reasonableness analysis under § 2254(d)(1).  <u>Id.</u>

The "novelty" in § 2254(d)(1) is "the reference to 'Federal law, <u>as determined by the Supreme Court of the United States</u>.'" <u>Lindh v. Murphy</u>, 96 F.3d 856, 869 (7th Cir. 1996) (en banc), <u>rev'd on other grounds</u>, 521 U.S. 320 (1997) (emphasis added).  Section 2254(d)(1) "explicitly identifies only the Supreme Court as the font of 'clearly established' rules."  <u>Id.</u>  "[A] state court decision may not be overturned on habeas corpus review, for example, because of a conflict with Ninth Circuit-based law." <u>Moore</u>, 108 F.3d at 264.  "[A] writ may issue only when the state court decision is 'contrary to, or involved an unreasonable application of,' an authoritative decision of the Supreme Court." <u>Id.</u>; <u>see also</u> <u>Baylor v. Estelle</u>, 94 F.3d 1321, 1325 (9th Cir. 1996); <u>Childress v. Johnson</u>, 103 F.3d 1221, 1225 (5th Cir. 1997); <u>Devin v. DeTella</u>, 101 F.3d 1206, 1208 (7th Cir. 1996).  Ninth

12

1  Circuit case law "may be persuasive authority for purposes of

2  determining whether a particular state court decision is an

3  'unreasonable application' of Supreme Court law, and also may help

4  us determine what law is 'clearly established.'"  Duhaime v.

5  Ducharme, 200 F.3d 597, 600 (9th Cir. 1999) (citing MacFarlane v.

6  Walter, 179 F.3d 1131, 1139 (9th Cir. 1999); O'Brien v. Dubois, 145

7  F.3d 16, 25 (1st Cir. 1998)).

8      With respect to the factual findings of the trial court, AEDPA

9  provides:

10         In a proceeding instituted by an application for a
           writ of habeas corpus by a person in custody pursuant to
11         the judgment of a State court, a determination of a
           factual issue made by a State court shall be presumed to
12         be correct.  The applicant shall have the burden of
           rebutting the presumption of correctness by clear and
13         convincing evidence.

14  28 U.S.C.A. § 2254(e)(1) (West Supp. 2006).

15                          **IV. DISCUSSION**

16      Majors claims that his Fourteenth Amendment right to due

17  process was violated when he was convicted on insufficient

18  evidence.  (Pet. 6.)  He asserts that the evidence was insufficient

19  to prove he intended to commit rape, which is a necessary element

20  of his convictions for kidnaping to commit rape and assault with

21  intent to commit rape.  (Id.)  Petitioner also claims his right to

22  due process was violated when the trial court admitted illegally

23  seized evidence.  (Id. at 10.)  The California Court of Appeal

24  found that videotapes admitted into evidence had been illegally

25  seized but found the error to be harmless.  (Id.)  Majors argues

26  the error was not harmless, and the court's finding of harmless

27  error was an unreasonable application of Chapman v. California.

28  (Id.; Pet'r's Mem. 15.)

In deciding a § 2254 habeas petition, this Court reviews the "last reasoned" state court decision.  Medina v. Hornung, 386 F.3d 872, 877 (9th Cir. 2004).  The California Supreme Court summarily denied Majors's petition for review.  (Lodgment No. 11, Majors, No. S130373, slip op. at 1.)  Therefore, this Court "looks through" that dismissal to the California Court of Appeal's decision of December 1, 2004, after remand from the supreme court on Petitioner's direct appeal.  Medina, 386 F.3d at 877.

**A.    Majors Is Not Entitled to Habeas Relief Because His Convictions Were Supported by Sufficient Evidence of Specific Intent to Rape.**

Majors claims the evidence produced at trial was insufficient to prove that he acted with the intent to commit rape.  (Pet. 6; Pet'r's Mem. 15.)  According to Petitioner, the evidence more clearly shows that he intended to commit some other sex offense, such as rape by foreign object.  (Pet. 6; Pet'r's Mem. 15; Traverse 4.)  Thus, Majors asserts that the court of appeal's decision to uphold his convictions for kidnaping for rape and assault with the intent to commit rape involved an unreasonable application of federal law.  (Pet. 6.)

Under AEDPA, a writ for federal habeas relief shall not be granted unless the state court's decision "was contrary to, or involved an unreasonable application of" Supreme Court precedent or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2).

> [A] state court decision is 'contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set

forth in [the Court's] cases' or 'if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from . . . precedent.'

Lockyer, 538 U.S. at 73 (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)) (citing Bell v. Cone, 535 U.S. 685, 694 (2002)).  A state court unreasonably applies federal law if its application is "objectively unreasonable," which is "more than [being] incorrect or erroneous."  Id. at 75.

The Due Process Clause protects a criminal defendant from conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  In re Winship, 397 U.S. 358, 364 (1970).  When challenging a conviction for insufficiency of the evidence, the constitutional standard established by the Supreme Court in Jackson v. Virginia is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Smith v. Mitchell, 437 F.3d 884, 889 (9th Cir. 2006) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

Petitioner argues the California Court of Appeal's decision is not entitled to deference under 28 U.S.C. § 2254(d) because the court did not cite Jackson or make any specific reference to the federal standard for determining sufficiency of the evidence. (Pet'r's Mem. 16; Traverse 3-4.)  Petitioner's reliance on Hiivala v. Wood, 195 F.3d 1098, 1106-07 (9th Cir. 1999), is misplaced. (Traverse 4.)  Hiivala discusses exhaustion, whether the Petitioner fairly presented a federal constitutional claim to the state courts, not whether the state courts applied a rule consistent with

15

clearly established Supreme Court law.  A state court's opinion is

entitled to deference under AEDPA so long as the court applies a

rule that does not contradict the governing law set forth by the

Supreme Court.  Early v. Packer, 537 U.S. 3, 8 (2002) (citing

Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).  This "does not

require citation of [the Supreme Court's] cases -- indeed, it does

not even require awareness of [Supreme Court] cases, so long as

neither the reasoning nor the result of the state-court decision

contradicts them."  Id.

The court of appeal explained the standard it applied as

follows:

> In determining whether the evidence is sufficient to
> support the verdict, we review the entire record, viewing
> the evidence most favorably to the judgment and presuming
> in support of the verdict the existence of every fact the
> jury could reasonably deduce from the evidence.  The
> issue is whether the record so viewed discloses evidence
> that is reasonable, credible, and of sufficient solid
> value to permit a rational trier of fact to find the
> elements of the crime beyond a reasonable doubt.

(Lodgment No. 9, Majors, No. D037968, slip op. at 18.)  This is in

line with the federal standard established in Jackson.  See

Jackson, 443 U.S. at 324 (holding that evidence is insufficient to

support a conviction when, based on the record viewed in a light

most favorable to the prosecution, no rational trier of fact could

have found guilt beyond a reasonable doubt).  Therefore, the state

appellate court correctly identified the governing law as set forth

by the Supreme Court.

"Our task under AEDPA, then, is to determine whether the

decision of the California Court of Appeal, holding that the

evidence was sufficient to convict [Majors], was an unreasonable

application of Jackson."  Smith, 437 F.3d at 889 (citing 28 U.S.C.

16

1   § 2254(d); <u>Juan H. v. Allen</u>, 408 F.3d 1262, 1274-75 (9th Cir.

2   2005)).   "The <u>Jackson</u> inquiry does not focus on whether the trier

3   of fact made the <u>correct</u> guilt or innocence determination, but

4   rather whether it made a <u>rational</u> decision to convict or acquit."

5   <u>Herrera v. Collins</u>, 506 U.S. 390, 402 (1993).

6       To determine whether the state court's application of <u>Jackson</u>

7   was unreasonable, the Court must look to state law to determine the

8   substantive elements of the crime necessary to support a

9   conviction.   <u>Jackson</u>, 443 U.S. at 324 n.16; <u>Panther v. Hames</u>, 991

10  F.2d 576, 581 (9th Cir. 1993).   Kidnaping for rape and assault with

11  intent to commit rape are specific intent crimes under California

12  law.   <u>People v. Dominguez</u>, 39 Cal. 4th 1141, 1151, 140 P.3d 866,

13  873, 47 Cal. Rptr. 3d 575, 583 (2006); <u>People v. Deporceri</u>, 106

14  Cal. App. 4th 60, 68, 130 Cal. Rptr. 2d 280, 286 (Ct. App. 2003)

15  (citations omitted).   A defendant can only be convicted of these

16  offenses if he acted with the specific intent to rape the victim.

17  "This specific intent element is sufficiently met when the

18  defendant sets out to 'use whatever force is required to complete

19  the sexual act against the will of the victim.'"   <u>People v.</u>

20  <u>Bradley</u>, 15 Cal. App. 4th 1144, 1154, 19 Cal. Rptr. 2d 276, 283

21  (Ct. App. 1993) (quoting <u>People v. Greene</u>, 34 Cal. App. 3d 622,

22  648, 110 Cal. Rptr. 160, 177 (Ct. App. 1973)).   "The question

23  whether the intent existed is one for the jury to determine from

24  the conduct of the defendant and the surrounding circumstances."

25  <u>Greene</u>, 34 Cal. App. 3d at 649, 110 Cal. Rptr. at 178 (citations

26  omitted).

27       The court of appeal found the jury had sufficient evidence to

28  conclude that Majors intended to rape Alesandria.   (<u>See</u> Lodgment

No. 9, <u>Majors</u>, No. D037968, slip op. at 19.)  The court stated:  "A
jury could reasonably conclude that at least one of Majors's
intents in gaining control of Alesandria was to rape her after the
van parked in the shopping mall."  (<u>Id.</u>)  The question before this
Court is whether the appellate court's determination was an
unreasonable application of the <u>Jackson</u> standard.  <u>See</u> <u>Juan H.</u>, 408
F.3d at 1274-75.

     The facts presented at trial, viewed favorably to the
prosecution, show that Majors pretended to be a security guard in
order to get Alesandria inside his van.  (<u>See</u> Lodgment No. 2,
Rep.'s Tr. vol. 3, 245-48.)  He then drove to an isolated location
in the mall parking lot, far away from any cars or pedestrians.
(<u>Id.</u> at 254.)  Petitioner would not let Alesandria get out of the
car; when she tried, he pulled her hair and slammed her head
against the window.  (<u>Id.</u> at 260.)  He ordered her to get in the
back of the van, then grabbed her and threw her down on the back
seat.  (<u>Id.</u> at 261.)  Majors held her shoulders and hands and
pushed her, forcing her to lay down on the seat.  (<u>Id.</u> at 264.)  He
then straddled Alesandria while pinning her arms to her chest so
she could not move.  (<u>Id.</u> at 264-65.)  Majors told Alesandria to
cooperate so he would not have to hurt her.  (<u>Id.</u> at 265.)

     The jury was instructed that to convict Petitioner of
kidnaping for rape or assault with intent to rape it must find he
specifically intended to commit the crime of rape.  (Lodgment No.
1, Clerk's Tr. vol. 2, 233, 241, Mar. 14, 2001; Lodgment No. 2,
Rep.'s Tr. vol. 3, 229, 232, 235.)  Rape was defined as "an act of
sexual intercourse with another person who is not the spouse of the
perpetrator accomplished against that person's will . . . ."

1  (Lodgment No. 1, Clerk's Tr. vol. 2, 244.)  Thus, the jury was

2  instructed that to convict Petitioner of kidnaping for rape or

3  assault with intent to rape, the jurors must find Majors intended

4  to have sexual intercourse with Alesandria against her will.

5      During deliberations, the jury sent a note to the trial judge,

6  stating, "We need clarification of rape, specifically of sexual

7  intercourse.  Does 'sexual penetration' mean by <u>any</u> object?"  (<u>Id.</u>

8  at 349, Mar. 13, 2001.)  The judge responded:  "No.  Sexual

9  intercourse as it is referenced in the jury instruction carries its

10  commonly understood meaning of penetration of the female sex organ

11  by the male sex organ."  (<u>Id.</u>)  The jury later sent another note to

12  the judge asking, "'Sexual Offense' as defined in the jury

13  instructions under 'Evidence of other sexual offenses' states:

14  'Rape of an unconscience [sic] person with a foreign object.'  Can

15  rape be performed in some instances with a foreign object[?]"  (<u>Id.</u>

16  at 353.)  The judge responded:  "No.  The crime of Rape, which

17  involves 'sexual intercourse' as we have defined that term, is

18  defined in Section 261 of the Penal Code."  (<u>Id.</u>)  The trial court

19  distinguished the crime of rape by a foreign object from the crime

20  of rape, pointing out that they are separate offenses and are

21  defined in different sections of the Penal Code.  (<u>Id.</u>)

22      These questions focus on the distinction between intent to

23  rape and intent to commit some other sexual offense.  By asking

24  questions about the precise definition of rape, the jurors

25  demonstrated they were trying to determine whether Petitioner's

26  actions showed intent to commit that particular offense.  The jury

27  considered and deliberated on whether Majors's intent was to rape

28

1   Alesandria or to rape her by a foreign object, and it ultimately

2   concluded Petitioner intended to commit rape.

3        While admitting that the evidence shows he intended to assault

4   the victim, Petitioner claims it was insufficient to show he

5   intended to commit rape "as opposed to committing some other sexual

6   offense, such as digital penetration or rape with a foreign

7   object." (Pet'r's Mem. 15.) He asserts that his actions in the

8   van do not show intent to rape because he did not unbutton his

9   pants, which would be necessary to commit rape. (<u>Id.</u>; Traverse 4.)

10  Majors also argues that the dildo found in his Jeep Cherokee "made

11  it more likely the petitioner intended to commit rape by a foreign

12  object or digital penetration." (Traverse 4; <u>see also</u> Pet'r's Mem.

13  15-16.) The crimes with which he is charged, however, took place

14  in the van, not the Jeep.

15       Intent to rape is commonly found where a defendant removes the

16  victim's clothing, exposes himself, or grabs the victim's breasts

17  or genitals. <u>See</u>, <u>e.g.</u>, <u>Nance v. Norris</u>, 392 F.3d 284, 290 (8th

18  Cir. 2004) (stating the act of removing a victim's clothing

19  corroborates an intent to rape); <u>People v. Craig</u>, 25 Cal. App. 4th

20  1593, 1601, 31 Cal. Rptr. 2d 96, 101 (Ct. App. 1994) (finding

21  intent to rape where defendant forcibly grabbed victim and "placed

22  one of his hands under her clothing[]"). But these actions are not

23  necessary to find intent to rape. <u>See</u>, <u>e.g.</u>, <u>Smith v. Hart</u>, No.

24  90-3361-RDR, 1993 U.S. Dist. LEXIS 7254, at *6-7 (D. Kan. May 14,

25  1993) (upholding jury's finding of intent to rape when defendant

26  assaulted victim and tried to drag her into a bedroom but did not

27  remove her clothes or touch her sexually). When presented with

28  evidence that Majors forced Alesandria to lie on her back, pinned

20

her arms down and straddled her after impersonating a security guard to get her in his van, a reasonable jury could find that he intended to commit rape, even though he did not unbutton his pants.

The presence of a plastic penis in a different vehicle, months later, did not prevent the jury from reasonably finding intent to rape.  One California court held that a vibrator in the shape of a penis found in the possession of a defendant at the time of the assault was evidence of "sexual motivation" rather than intent to rape.  <u>People v. Puckett</u>, 44 Cal. App. 3d 607, 614 & n.5, 118 Cal. Rptr. 884, 889 & n.5 (Ct. App. 1975).  Here, however, the plastic penis was found in Majors's possession when he was arrested two months after the assault.  Alesandria did not testify to seeing a plastic penis in Majors's possession during the assault.  The existence of the plastic penis does not undermine the jury's finding that Petitioner intended to commit rape.

The jury was presented with evidence that Majors has a propensity to commit sexual offenses, including rape.  Majors admits that his prior offenses against his ex-wife, which were presented at trial via stipulation, showed an intent to commit rape in addition to other offenses.  (Pet'r's Mem. 15.)  It is clear that the jury considered evidence of the prior rape because it directly referenced the evidence in a note sent to the judge.  The jury's note asked, "Did the crime of which the defendant was previously found guilty include 'sexual intercourse' as defined in the answer to the first question[?]"  (Lodgment No. 1, Clerk's Tr. vol. 2, 354, Mar. 13, 2001.)  The judge answered, "Yes, one of the crimes did, in violation of Penal Code section 261.  She (his former wife) was unconscious at the time of sexual intercourse."

1  (Id.)  Thus, the jury knew that Majors had previously committed
2  rape and considered this evidence in reaching its conclusion that
3  Petitioner had the requisite intent.

4       The Court "must respect the province of the jury to determine
5  the credibility of witnesses, resolve evidentiary conflicts, and
6  draw reasonable inferences from proven facts by assuming that the
7  jury resolved all conflicts in a manner that supports the verdict."
8  Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995) (citing United
9  States v. Endicott, 803 F.2d 506, 515 (9th Cir. 1986)).  After
10 hearing the testimony of the victim, learning of Majors's prior
11 sexual offenses, and hearing all other evidence presented at trial,
12 the jury found Petitioner possessed the intent to rape.  There is
13 sufficient evidence in the record to support that conclusion.

14      Although intent to commit rape, rather than some other sexual
15 offense, was not the only possible interpretation of the evidence
16 presented, it was one rational interpretation.  That is all that is
17 required under Jackson.  See Smith v. Mitchell, 437 F.3d at 889
18 (stating the standard as "'whether any rational trier of fact could
19 have found the essential elements'").  Therefore, the California
20 Court of Appeal did not unreasonably apply Jackson in affirming
21 Petitioner's convictions for kidnaping to commit rape and assault
22 with intent to commit rape.  Majors's claim of insufficient
23 evidence should be **DENIED**.

24 **B.**  **Majors's Fourth Amendment Claim Is Not Cognizable on Federal**
25      **Habeas Review.**

26      Petitioner's second claim for relief is that he was denied due
27 process of law and a fair trial when evidence of the sexual assault
28 on his ex-wife was admitted into evidence to prove his propensity

22

to commit rape.  (Pet. 10; Pet'r's Mem. 13.)  The California Court
of Appeal held that the videotape depicting the assault on his ex-
wife was illegally seized in violation of the Fourth Amendment, and
accordingly, it ordered that Petitioner be allowed to withdraw his
guilty pleas to counts five through nine of the information.
(Lodgment No. 9, <u>Majors</u>, No. D037968, slip op. at 11, 23.)  The
court found, however, that the admission of the stipulation about
those offenses at trial as propensity evidence was harmless error
under <u>People v. Watson</u>, 46 Cal. 2d 818, 299 P.2d 243 (1956), and
<u>Chapman v. California</u>, 386 U.S. 18, 24 (1967).  (<u>Id.</u> at 18.)
Majors claims the state court erred in holding that admission of
the evidence was harmless error, asserting that "the evidence had a
substantial and injurious impact upon the jury, and was therefore
prejudicial under <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637 (1993)."
(Pet. 10.)

     <u>Brecht</u>, however, does not require a different result.  "[The
<u>Watson</u>] standard under California state law is the equivalent of
the <u>Brecht</u> standard under federal law, to wit, whether the errors
had a substantial and injurious effect or influence in determining
the jury's verdict." <u>Bains v. Cambra</u>, 204 F.3d 964, 971 n.2 (9th
Cir. 2000) (internal quotations omitted).

     Even so, "[a] Fourth Amendment claim is not cognizable in
federal habeas proceedings if a petitioner has had a full and fair
opportunity to litigate the claim in state court." <u>Ortiz-Sandoval
v. Gomez</u>, 81 F.3d 891, 899 (9th Cir. 1996) (citing <u>Stone v. Powell</u>,
428 U.S. 465, 481-82 (1976)).  The Supreme Court, in <u>Stone v.
Powell</u>, weighed the utility of the Fourth Amendment exclusionary
rule against the benefits of barring these claims from federal

23

1   habeas review.   The Court reasoned that the "long-recognized costs

2   of the rule persist when a criminal conviction is sought to be

3   overturned on collateral review . . . ."   <u>Stone</u>, 428 U.S. at 491.

4   Therefore, "where the State has provided an opportunity for full

5   and fair litigation of a Fourth Amendment claim, a state prisoner

6   may not be granted federal habeas corpus relief on the ground that

7   evidence obtained in an unconstitutional search or seizure was

8   introduced at his trial."   <u>Id.</u> at 494.   "The relevant inquiry is

9   whether petitioner had the opportunity to litigate his claim, not

10  whether he did in fact do so or even whether the claim was

11  correctly decided."   <u>Ortiz-Sandoval</u>, 81 F.3d at 899 (citations

12  omitted).

13      Majors admits that <u>Stone v. Powell</u> bars federal habeas review

14  of Fourth Amendment search and seizure claims when the petitioner

15  has had a full and fair hearing on the issue in state court.

16  (Traverse 5.)   But Petitioner argues that his claim is not barred

17  because he is not challenging the merits of the state court's

18  determination, but rather he is raising a "separate constitutional

19  issue arising from the prejudice of the admission of the illegally

20  seized evidence."   (<u>Id.</u>)   Majors claims the court of appeal

21  committed constitutional error, separate and distinct from its

22  decision about the illegal search and seizure, when it found that

23  admission of the stipulation was harmless error.   (<u>Id.</u>; Pet'r's

24  Mem. 14.)

25      Several district courts have found that claims like the one

26  presented by Majors are not cognizable on habeas review.   <u>See</u>,

27  <u>e.g.</u>, <u>Brown v. Sirmons</u>, 415 F. Supp. 2d 1268, 1284 (N.D. Okla.

28  2006); <u>Mena v. Greiner</u>, No. 01 Civ. 1358(DAB), 2002 WL 31867723, at

1    *3 (S.D.N.Y. Dec. 20, 2002); <u>McCambridge v. Hall</u>, 68 F. Supp. 2d 1,

2    3-4 (D. Mass. 1999); <u>Bastardo v. Marshall</u>, No. Civ. A. 93-40099-

3    NMG, 1997 WL 667785, at *2 (D. Mass. Oct. 16, 1997).  The courts in

4    <u>McCambridge</u> and <u>Bastardo</u> specifically rejected the argument

5    presented by Majors that error in the state court's harmlessness

6    analysis is separate from the underlying Fourth Amendment error:

> A state court's determination of harmlessness, even if
> incorrect, does not constitute a violation of a
> constitutional right.  Such a determination is not
> independent of the underlying error.  The analysis of
> harmless error by the state appellate court is part of
> that court's view of a defendant's claim that his
> conviction was improper because of the state trial
> court's failure to suppress evidence.
>
>           . . .
>
> Review of a state court's determination of harmless
> error where the underlying error involves the Fourth
> Amendment is, for all practical purposes, the equivalent
> of reviewing a claimed Fourth Amendment violation. . . .
> This is exactly what the Supreme Court in <u>Stone v. Powell</u>
> sought to prevent.

16   <u>McCambridge</u>, 68 F. Supp. 2d at 4 (quoting <u>Bastardo</u>, 1997 WL 667785,

17   at *2).

18   The Third Circuit discussed in great depth whether <u>Stone</u> "bars

19   federal habeas corpus review of a state court's determination that

20   a violation of the habeas petitioner's Fourth Amendment rights

21   constituted harmless error."  <u>See</u> <u>Gilmore v. Marks</u>, 799 F.2d 51, 52

22   (3d Cir. 1986).  The petitioner in <u>Gilmore</u> argued that he was

23   denied due process when the state court found admission of a

24   confession obtained in violation of the Fourth Amendment to be

25   harmless error.  <u>Id.</u> at 54.  The federal court rejected Gilmore's

26   claim, finding, "[a] habeas claim based on a state court's

27   determination that the introduction of evidence from a Fourth

28   Amendment violation was harmless error is inseparable from the

1  underlying Fourth Amendment claim." Id. at 55.  "Thus, for

2  purposes of the Stone v. Powell rule, a habeas petitioner's claim

3  that a state appellate court improperly found a Fourth Amendment

4  violation to be harmless does not have a separate identity and may

5  not be raised in a habeas petition in federal court." Id.  A

6  "petitioner may not cloak his or her Fourth Amendment claim in due

7  process clothing to circumvent Stone v. Powell." Id. at 57.

8       Majors's Fourth Amendment claim was fully and fairly litigated

9  in state court.  Petitioner filed a motion in the trial court,

10 seeking to quash the search warrant and to suppress the evidence

11 obtained as fruit of the illegal search.  (See Lodgment No. 1,

12 Clerk's Tr. vol. 1, 19-21.)  Majors received a hearing on the

13 motion which included extensive oral argument as well as

14 examination of a witness, Detective Jana Beard.  (See Lodgment No.

15 2, Rep.'s Tr. Augment, 10-75.)  The court granted the motion in

16 part and excluded seized computer disks from use at trial.

17 (Lodgment No. 1, Clerk's Tr. vol. 2, 335.)

18      Petitioner's claim was also fully litigated on appeal.  Majors

19 argued to the California Court of Appeal that his Fourth Amendment

20 right to be free from illegal search and seizure was violated when

21 the police seized and viewed the videotapes.  (Lodgment No. 3,

22 Appellant's Opening Brief at 8, Majors, No. D037968 (Cal. Ct. App.

23 Dec. 13, 2002).)  The court thoroughly considered the issue,

24 devoting eight pages of its reasoned opinion to this claim, and

25 agreed with Petitioner that the evidence was obtained illegally.

26 (Lodgment No. 6, Majors, No. D037968, slip op. at 4-11.)  As a

27 result, the court ordered that Majors be allowed to withdraw his

28 guilty pleas to the offenses that were only discovered by viewing

26

the videotapes.  (Id. at 23.)  On remand after review by the
supreme court, the appellate court again examined Petitioner's
Fourth Amendment claim and held that the evidence was illegally
obtained.  (Lodgment No. 9, Majors, No. D037968, slip op. at 4-11.)

Although the court ultimately held that the trial court's
admission of the stipulation was harmless error, Majors was given a
full and fair hearing on his Fourth Amendment claim.  This Court is
therefore barred by Stone v. Powell from re-examining issues
relating to the seizure of the videotape.  See Agee v. White, 809
F.2d 1487, 1490 (11th Cir. 1987) (holding that a state court's
harmlessness analysis "constituted a full and fair appellate
litigation, foreclosing the claim from federal habeas review")
(citations omitted); accord McDaniel v. Oklahoma, 582 F.2d 1242,
1244 (10th Cir. 1978); Moore v. Cowan, 560 F.2d 1298, 1300 (6th
Cir. 1977).

Under Stone, a state appellate court's application of the
harmless error doctrine, even if applied incorrectly, does not
entitle a petitioner to federal habeas relief.  Mack v. Cupp, 564
F.2d 898, 902 (9th Cir. 1977); Cole v. Estelle, 548 F.2d 1164, 1165
(5th Cir. 1977); see also Siripongs v. Calderon, 35 F.3d 1308, 1321
(9th Cir. 1994) (stating that "correctness of the state court
resolution" of the Fourth Amendment claim is "an issue which Stone
v. Powell makes irrelevant").  Even if this Court were to
distinguish Stone and consider Petitioner's complaint about the
state court's harmless error analysis, Majors is not entitled to
relief.  The California Court of Appeal did not "appl[y] harmless-
error review in an 'objectively unreasonable' manner."  Mitchell v.

1   _Esparza_, 540 U.S. 12, 18 (2003).  Petitioner's second claim is thus

2   precluded from federal habeas review under _Stone v. Powell_.[1]

3                              **V. CONCLUSION**

4        For the above reasons, the district court should **DENY** Majors's

5   Petition for Writ of Habeas Corpus.

6        This Report and Recommendation will be submitted to the United

7   States District Court judge assigned to this case, pursuant to the

8   provisions of 28 U.S.C. § 636(b)(1).  Any party may file written

9   objections with the Court and serve a copy on all parties on or

10  before January 12, 2007.  The document should be captioned

11  "Objections to Report and Recommendation."  Any reply to the

12  objections shall be served and filed on or before January 26, 2007.

13  The parties are advised that failure to file objections within the

14  specified time may waive the right to appeal the district court's

15  order.  _Martinez v. Ylst_, 951 F.2d 1153, 1157 (9th Cir. 1991).

16

17  Dated: December 21, 2006          _Ruben Brooks_

18                                    Ruben B. Brooks
                                      United States Magistrate Judge

19  cc:  Judge Moskowitz
         All parties of record

20

21

---

22      [1] Majors twice raises the spectre of the cumulative effect of

23  the constitutional error.  "The combined effect of the evidence,
    jury instructions, and argument by the prosecution concerning

24  evidence that was based upon the illegally seized videotapes had a
    substantial and injurious effect upon the jury . . . ."  (Pet'r's

25  Mem. 15; Traverse 7.)  Petitioner did not raise a cumulative error
    claim in the state courts.  If he had, he would fare no better.

26  Because Major's Fourth Amendment claim is not independent of his
    harmless error claim, _Stone v. Powell_ precludes habeas relief.  _See_

27  _Gilmore v. Marks_, 799 F.3d at 55-56.  Likewise, his complaint about
    the related jury instructions and argument by the prosecution meets

28  the same fate.  As a result, there are no cognizable errors to
    combine.